Good morning, Your Honors. Excuse me. Good morning. May it please the Court, Kyle Freeney on behalf of Appellant Venequip. So in this case, Your Honor, Venequip seeks to use Section 1782 in precisely the type of situation in which it was intended to obtain evidence located in the United States in possession of a third-party Mustang who is not subject to the jurisdiction of the Swiss courts for use in a commercial business dispute with a former business partner, Kat Sorrell. Now in denying Venequip's request for evidence, the District Court committed legal error in its construction and in its application of at least three of the or three of the four intel factors. Principal among these was the District Court's erroneous conclusion that Venequip's application concealed an attempt to circumvent Swiss proof-gathering restrictions. Now this conclusion was based on two different factors, neither of which can support that conclusion whether together or separately. The first of those factors was the fact that Swiss procedure makes available more limited pretrial discovery than is available in the United States. That's something that's true of all civil law jurisdictions. And the second factor was the existence of a forum selection clause between Venequip and Kat Sorrell, something that features in the overwhelming majority of transnational commercial disputes. So taken to its logical conclusion, the District Court's denial of Venequip's request for evidence would hollow out Section 1782 by removing from its ambit a wide swath of transnational commercial cases that Congress enacted and amended over the years the statute to cover. Counsel, can we go back to the second sentence of your opening, which I understood you to say that the District Court committed legal error both in its enunciation of the standard and in its application. So the first one is the one I'm hung up on. I don't see any misstatement of the four intel factors in the District Court's opinion. I take your point that you vehemently disagree with the way it was applied. But I don't see you to take issue with the way the District Court said, here's what the intel factors are, 1, 2, 3, 4, properly stated. Am I off base yet? That's correct, Your Honor. So in the sense that the District Court did properly quote the intel factors, but what it did was it committed legal error in equating, for example, so under that third intel factor, circumvention of a proof-gathering restriction. Instead of applying that as it was intended by the Supreme Court and as construed by this Court in other cases, it construed that standard to be met by a near non-availability of discovery mechanisms. And we submit that that is a legal error. Is there a distinction in the 1782 applications that Venequip has filed against Mustang versus the ones that it's filed against the other eight or nine entities in the United States? I'm sorry. I missed the distinction? Yes. So I understand that Venequip has filed, is it eight or nine? Yes, Your Honor. Of these 1782 applications. Is the information sought in the 1782 application here the same or different than the other seven or eight, depending? Understood. So there is an overlap, but there are absolutely distinct pieces of information that Venequip seeks from Mustang that it does not seek from other sources. And part of the reason for that is that Venequip has developed evidence both prior to its filing of the application and through evidence obtained from another reseller where the Section 1782 application was granted, developed evidence that leads Venequip to believe that Mustang was among those Caterpillar sellers that was selling into Venequip's territory and for which invasion fees were not paid. And so Venequip seeks things directly from Mustang that would be in Mustang's unique possession, so to speak. Last question on this and then I'll stop. Suppose I'm a district court and I'm applying, I'm looking at a 1782 application and I look at the intel factors and I say, okay, I'm applying those. But in my estimation and in my discretion, I think there's actually a fifth factor that I should take into account. Have I committed legal error by adding a fifth factor to what intel says would guide my discretion? So I think it would depend on what that fifth factor is. So our position is not necessarily that the four factors are absolutely exclusive. However, where the Supreme Court has spoken, and in this case it's spoken on the question of when nondiscoverability is a reason to deny, then it would be error to deny on that basis rather than on the basis that the Supreme Court indicated, which was an actual circumvention of true proof-gathering restrictions. Could I look at it and say, you know, my fifth factor is whether the applicant has filed a bunch of these other things against a bunch of other corporate affiliates of the, you know, the Swiss litigation party? I mean, could I use that as one of my fifth factors? No, I don't believe that would be appropriate because the Section 1782 mechanism was intended, and as construed by the Supreme Court in intel, to provide broad discovery against third parties. And in this case, there are a number of U.S. sellers of equipment that Venikeep has every reason to believe have relevant evidence. That would be — that would probably be common in a lot of different transnational commercial cases where evidence is expected to be located in the United States. Counsel, let me ask you. I follow you on the forum selection clause not dictating a result in this case, or at least as pertains to this statute. But as I understand it, and I don't know — I know only about Swiss law based upon what's in your briefing. It seems to me that there's no dispute that it's sort of a bifurcated process. There's an initial submission, and then later on the Swiss court allows the filing of a claim, I think is the term they use. And in that initial period, discovery is very limited if at all allowed in Swiss courts. Is that a distinction for purposes of this statute? If we're in the first period prior to the filing of the claim, is there anything that suggests that — any case law that suggests that it's okay to do discovery of this sort while we're still waiting for the claim to be filed? Yes, Your Honor. So that is not a distinction that is present in the law. Intel, in fact, was a case in which the court said a case doesn't even need to be filed. It only needs to be in reasonable contemplation. And so those Intel factors are articulated to cover cases that are pre-filing. And then, in fact, the — so there is evidence in the record that that is not a distinction, the distinction between the various stages. And actually, Mustang's own expert agrees with that. Now, not in this case, in a separate case in the Southern District of New York, but articulated that it would not be a circumvention of Swiss proof-gathering restrictions to use 1782 to obtain evidence in a pre-filing stage, in a pre-statement of claim stage. And so because of that, there is no proof-gathering restriction. It is an error to equate non-availability, you know, just simply not making those court-supervised mechanisms available, with something that is truly a proof-gathering restriction. Swiss law, as the record shows, but the district court failed to address, gives litigants wide leeway to gather evidence in the way they see fit. And there's no reason to think that when Vannekeep and Count Sorrell entered into a form selection clause, they intended to place themselves in any different position than any other litigant who finds themselves in Swiss court. Another question. What's the status of the Seventh Circuit proceedings? I understand that this issues before the Seventh Circuit. That's correct, Your Honor. The case was argued, I believe, on September 29th of last year. So, you know, I also argued that case. We received a lot of excellent questions. We are awaiting a decision in that case. And in any event, just to emphasize, we are seeking evidence from Mustang that is exclusively, we expect, in possession of Mustang, that is not at issue in the Seventh Circuit case. What do you make of, at the end of the day, assuming we agree with you on the law and that it was a timely and appropriate action to pursue this discovery against Mustang? The court, at the conclusion, I think the district court found that the requests were entirely overly broad, burdensome, and so on. What should we do with that? I mean, if you lose at the end of the day, based on that, then even if you succeed on the law, the legal question, the result is the same, isn't it? Right. And so we don't think it would be appropriate for the result to be the same. But as an initial matter, of course, we think the court erred on its findings on the third factor, and that necessitates reversal. We think on the fourth factor, the scope of discovery, we think it would be error to simply deny outright, on that basis, the entire use of Section 1782, because the fourth factor really, the intel factors are part of a screen for abuses. The federal rules of civil procedure, on the back end, are well-equipped to take care of issues relating to proportionality. Now, that's the basis on which the district court found the fourth factor in favor of Mustang, although of note, so it did not find that they were abusive, because of course they're not. They're directly written toward Mustang's, excuse me, Venikeep's claims against Kat Sarle. It's also worth noting, I think, Your Honor, that the court found lack of proportionality, but it didn't actually entertain any evidence from Mustang about the burdens involved. And it had before it that Venikeep, just based on the information currently available to it, values its claims against Kat Sarle for $140 million. Well, but some of the requests seem to me to be on their face entirely, you know, from this date all the way, and it's quite a length of time, and of course with the electronically stored information now, I think it's a reasonable assumption that there's going to be a large volume of material that matches that categorical description. And Venikeep was open to tailoring the request through the mean confer process. It just, the district court denied outright, rather than engaging in that opportunity and letting the parties engage in that opportunity. And we believe that's error, in particular, because the court didn't even entertain what is the burden. And that would help the parties figure out how to tailor, because some things may be more burdensome than others, and that's information uniquely in possession of Mustang and not Venikeep. Unless the court has any other questions, I will take my seat and return on rebuttal. Anything, Jim? Okay, thank you. Let's hear from counsel for Mustang, Ms. Pryor-Bays. Yes, Your Honor. May it please the court, I'm Holly Pryor-Bays, and I'm here for Mustang. In response to this overbroad fishing expedition by Venikeep, I appreciated some of the questions from the panel to Ms. Freeney, because it precisely focuses in on why the district court's decision was not an abuse of discretion. The application, one of at least ten across the country, outside of the Swiss discovery limitations, seeks American-style pretrial discovery. And I have to tell you, in the Southern District of Texas, those types of requests would be quashed by the Southern District, and Judge Hanks did just that. He looked at the entire set of circumstances, used all of the intel factors, followed intel guidance, and decided that the application should not be issued. I appreciated the beginning questions about abuse of discretion, because I think intel is clear that the court, in its abuse of discretion, in that standard, in its review of the application, once the statutory factors are met, moving to the discretionary factors, they are not exclusive. There's not a mechanical application. Intel describes that at page 265. There are guidelines, and intel specifically says that the court can consider other factors. Judge Hanks, in this regard, did consider the Forum Selection Clause. He did not use an unavailability standard. He did not use a foreign exhaustion standard. He did not say to Venequip, you must go to Switzerland first before you could ever come here. But he did look at a number of factors, considerations under that third factor. And I must point out to the court, and I know that Venequip has argued with this in our briefing, that Judge Hanks did this once before, in a case called Bonocca, from his court in 2022, that was affirmed by the Fifth Circuit. There are some differences in that case, but in that case, Judge Hanks saw a Forum Selection Clause and said this matters, just like he said this matters here. In the case between Venequip and Katzoril, the Forum Selection Clause is very broad. And I must stress again, this was only one consideration under the judge's analysis for Factor III. Let me get back to, you mentioned several times already, Intel. In Intel, the Supreme Court stated, beyond shielding materials safeguarded by an applicable privilege, nothing in the text of Section 1782 limits a district court's production order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there. That's at page 260 of the Intel opinion. So if the materials sought in this country need not be discoverable in the foreign jurisdiction, doesn't that resolve the third Intel factor in favor of Venequip? No, Your Honor, it does not. And I think Judge Hanks lays that out in his opinion. There are a number of other factors. It's not only that the material is not there, then therefore you get full-scale discovery here. If that were the case, that factor wouldn't mean anything. Instead, the courts have given guidance, not the Fifth Circuit, but other courts have given guidance that if the party is sidestepping the forum, which that is clear here by ten applications seeking broad-range discovery and never asking the Swiss for discovery from another party because they couldn't, they weren't allowed to. If that's the case and it looks like they're sidestepping that forum, that should make the district court analyze what discovery is available there, what is the nature of that tribunal, and are they circumventing that tribunal? Here, when Venequip filed their application, they were in conciliation processes. They were intending to file a statement of claim. They never filed their statement of claim. That deadline passed. Well, let me ask you, your opponent, I set forth my understanding, as pedestrian as it is, of Swiss law. Is there an opportunity after a claim is filed, do you agree that there's an opportunity for broader discovery in the Swiss proceedings that would be more akin to what they're asking for here? No, Your Honor, there is not under Swiss law. Under Swiss law, certainly, you have to file a statement of claim first, which they have not, and then the parties engage in extensive written submissions in which they describe what the relevant facts are, what are their claims, and what evidence they anticipate needing to prove their claims. Only when you get past that first phase do you get into the evidentiary phase, and the record is clear based on the submissions of the parties, including their own expert on Swiss law, that the Swiss government, excuse me, the Swiss authority controls that discovery. And they do not take out-of-court depositions. It's very, very rare to get a deposition of a foreign entity in Switzerland. And if you do, it's typically because the Swiss authority seeks it. It is not party-controlled. And that is what the evidence was in front of the district court when they said, under the Factor III, that it overwhelmingly favors Mustang. Here is an applicant going around the country harassing... They did not say that. We would say that. Caterpillar has said that in their motions, in their pleadings. Caterpillar's distributors and customers and employees. And that's certainly under... is admissible and relevant to whether or not Also, too, if they're on the... making... the words that they use is making an end run around Switzerland. Venequip did not go to the Swiss court and ask for evidence to seek here. It did not use the Hague Evidence Convention. It did not do that. Instead, it filed multiple actions around the country. I think it is important, though, and Venequip has said this a few times, and I said this earlier, this Forum Selection Clause was not the only basis at all in the district court's order. Before we move off of the Forum Selection Clause, it sounds like you're arguing as a general proposition that the Forum Selection Clause condemns the party to discovery practices in that forum, however restrictive they may be. And I guess the reason I'm asking is because when we think of Forum Selection Clauses commonly here, we think about this state, this county, parish, whatever have you, as opposed to an International Forum Selection Clause. So I don't think it's a general proposition, or it should be as a matter of law, that if a Foreign Selection Clause exists, you cannot take advantage of 1782. But this clause is incredibly broad. And this court looked at this clause, as it has done before in other cases, and said this discovery dispute is encompassed in that clause, and we enforce Forum Selection Clauses, even international ones. The parties, they're sophisticated. They knew the Swiss rules when they agreed to using and selecting the Swiss Forum. Both of them understood that. And so this discovery dispute, whether or not I can go to the United States and seek broad-range discovery that I could never get here, which Venequip admits in their briefing, that they could never get this style discovery through the Swiss Forum, they never went there and had this discussion with any Swiss authority in the Swiss Tribunal. That's because, Venequip knows, they would be told no. And that is a factor that's used in cases. When a litigant, an applicant, goes to courts in order not to get a negative ruling from the foreign tribunal, courts are allowed to consider that under the third factor. And there is case law to support that. It's also important that, in this case, and we haven't touched on it yet, that this information is available from the Swiss Tribunal. Caterpillar, Inc. And this is part of the record. Caterpillar, Inc. agreed to produce documents to Kat Sarl, the Swiss entity, as ordered by the Swiss court. And so that's in the record at 404. And Caterpillar, Inc. has agreed to do that. So there is, on the first factor, on the third factor, and on the fourth factor, as well as the second factor, I think it goes to all of them, there is an agreement and understanding that this information can be produced, will be produced, in the Swiss forum. But Venequip never got to that point because they didn't file their statement of claim. Instead, right now, they're at a point where they've requested to take evidence from Kat Sarl, and they admit in their briefing that they're seeking from Kat Sarl, the Swiss entity, information that they're seeking from Mustang. And that concession, I think, is a rather pointed concession that that information is available in that forum. In the record, there were at least six references to the fact that what Venequip needs to calculate their damages against Kat Sarl in Switzerland to assess the sales that were made in Venezuela that potentially could lead to invasion fees being paid, that's their claim. All that information is available in one database, and that's a database maintained by Caterpillar that Kat Sarl can get access to if ordered by the Swiss court and produced. And of note in their briefing, in the lower court record, they included that none of the applicants so far have turned that database over because Caterpillar Inc. has not allowed it. It's a confidential database. So Caterpillar Inc. and Kat Sarl are the parties in control of that database. They're the ones that database should be sought from through the Swiss proceeding, and that's what they've asked for now because they didn't file a statement of claim. It's a completely different procedural process than when the district court said there was jurisdiction to hear this dispute, and I think that's important as well. I think also if we turn to the fact... On page 43 of our brief, we do include some citations to cases, to courts who have said that the forum court, the foreign court, is in a better position to know what's relevant and what's discoverable. I agree with the court opinions that say as a non-party, which Mustang is here, we are a stranger to this entire dispute. As a non-party, we have the protections of Rule 45 and Rule 46, and I certainly understand that a district court can say, I'm going to allow the application, but under the fourth factor, I'm going to modify that subpoena. And that is because of those protections, but a district court also has the discretion, even under Intel, to say under the fourth factor, I'm not going to modify it. It is not my obligation to do so. It is the litigant's obligation. It's the applicant's obligation. And Judge Hank said just that. He cited to Intel at 245 that says that the district court can modify or reject. And he cited to some other cases, as well as in the Appellee's brief on page 44, we cited to cases that said that the district court has no such obligation to modify. Also, the district court pointed out a fact different than what Ms. Freeney stated. Venequip never did so. The briefing is heavy for a discovery issue, and not once did Venequip submit a revised subpoena, recognizing the fact that there are 28 requests for documents, mostly seeking Caterpillar documents, and 22 topics for deposition, mostly seeking Caterpillar information, or information they can get from Caterpillar Sorrel in the Swiss proceeding. They never attempted to conference or to limit those requests. And based on that, the district court, considering those factors, decided that it could go ahead and just reject that subpoena and quash the subpoena completely. It was not under an obligation to modify it. Counsel, suppose we agree and affirm what Judge Hanks did. Is this without prejudice to Vene... I'm always mispronouncing it, keep Venequip refiling a narrower 1782 application? Could they go back and say, you know, gosh, maybe that one was overbroad, but really we need this, like, whatever, six documents. So here's our new application, and we think we can meet the four intel factors and we can meet Judge Hanks' concerns. Could they do that? I don't believe... Well, I don't believe they... That's a good question. I don't believe they could do that based on where the procedural posture of the case... Possibly they could. I don't think they would be successful in it at all, because the factors are still the same. The position of the Swiss proceeding and them in the Swiss proceeding is still the same. If it would have only been... If the application would have been denied solely on factor 4, I would understand them saying, going back to the judge, filing a motion for reconsideration within the appropriate time period instead of coming to the Fifth Circuit and saying, you know what, we're going to... Let me tell you the status of our other applications, let me explain to you where we are in the Swiss court now, and let me modify that subpoena. I apologize. I asked the question in an artful way. I don't necessarily mean as in this case. It's more of a civil procedure question. So imagine a different set of circumstances with different strangers to litigation, with different foreign proceedings. Just as a matter of law, could an applicant be unsuccessful in a 1782 application at time 1 and then come back at time 2 and be like, okay, fine, here's a narrower one? Or is there some kind of like race... I'm sorry, race judicata collateral estoppel effect? The Northern District of Illinois opinion left that open and said, if you don't get your documents from Caterpillar in Switzerland, you can come back here. I don't believe that Judge Hanks left that open. He denied it in total, and I would say that there are race judicata collateral estoppel issues. If that was a final order and all the issues had an opportunity to be heard, I would say that there's not a second bite at the apple. I think the only... Yes, I think the only exception to that would possibly be if it was only the fourth factor and you could come back and say you agreed with everything else. But, no, I believe at this point it would be race judicata collateral estoppel because it was a final order that was appealable, and both parties were completely heard, I think overly heard by the district court. I would like to just... I have just a few minutes left. What we haven't touched, what I have not touched on yet is a response to their argument that this destroys forum selection clauses by a court using it as one factor. And I would just like to point to the court, to the recent Supreme Court opinion in ZF Automotive v. LuxShare that was decided in June of last year. And in that decision, the Supreme Court clarified that forum selection clauses are enforceable and the 1782 right is discretionary by the court, and it doesn't apply to private arbitrations. There are limits to 1782. We see that in the text of the statute where it specifically says that the district court may authorize an application. If we were to say a district court has to rewrite the subpoena, we would completely obviate Factor 4. If we were to say a district court can only apply these mechanical points, and that's it, that's all they consider, it would not be an abusive discretion standard. That would no longer apply. Those factors would be made meaningless. But that's not what the cases say. Instead, this court, we would ask to give deference to the district court's opinion as we do in abusive discretion standards. And it was clearly not arbitrary. It wasn't clearly erroneous. Judge, there is no case that Vinniquip can point to that says that the district court should not have considered the forum selection clause at all. He had done it previously, and it was affirmed by this court. Judge Rosenthal did it in another case in the Southern District, and that has not been appealed, or is on appeal, it might be. Ms. Freeney will correct me on that, I'm sure. But there is precedent for consideration of a forum selection clause as one of many factors, which is what the district court did here. And it certainly is clear, as the district court put it in its opinion, that there is evidence in an implication that Vinniquip is sidestepping, is going around the Swiss forum. We certainly see that with the number of applications they filed and trying to import American civil pretrial discovery into a forum that just simply does not allow it. And so, therefore, a Mustang would ask that you affirm the district court's discretion and affirm the denial of the application. Unless there are other questions, I think I'm concluded. Okay. All right, thank you. Thank you. All right, Ms. Freeney, you have five minutes of rebuttal time. Thank you, Your Honors. I'd like to start by noting that my friend on the other side has conceded in her argument that forum selection clauses should not, as a matter of course, ordinarily preclude resort to Section 1782. But in this case, the appellee has not identified, and the district court did not identify, principled reasons that this case is different from any of the other sort of vast run of transnational commercial disputes that involve a civil jurisdiction with more limited pretrial discovery and a sort of standard forum selection clause. My friend on the other side calls the forum selection clause broad, but it's actually, you know, a fairly routine forum selection clause. And so that's not a principled basis to distinguish this case, and we submit it would be an abuse of discretion. What's the status of the Swiss case? Is there a claim that actually has now been filed? No, what there is right now... Is there something here? There is a request for evidence, which is a peculiar type of request. It is not just, is this information relevant? There are additional requirements based on the stage. And so that is pending before the Swiss court. And Venikeep is not assured that it will get that information. So among other reasons, the information... Request for evidence from Caterpillar. From Kat Sarl, from the party to the contract. Now, appellee notes that the parent to Kat Sarl Caterpillar has made a representation that if ordered by the Swiss court, it would voluntarily turn over certain information, again, a subset of the information that is at issue here. But again, Venikeep is not assured that a court will actually require that for various reasons, including that Mustang's own expert has opined, again, in another case, that voluntary submission to the jurisdiction of the Swiss court is actually not adequate. Now, of course, Venikeep takes a different position in the Swiss court, but the salient point is that that is not assured, and also, there is no exhaustion requirement, and so Venikeep has the right to seek that information here. And in addition, is seeking information that is uniquely in Mustang's possession that could not be turned over to the Swiss court. Now, appellee faults Venikeep for not seeking that information in Switzerland, but the Swiss courts, I don't think there's a dispute, lack jurisdiction over appellee Mustang. Now, we take exception to appellee's characterization that these subpoenas are harassing. From Venikeep's perspective, the necessity for these has to do with where the evidence is. It's in the United States. There are reasons to believe that these dealers have evidence, and what Venikeep understands is a coordinated effort on behalf of Caterpillar and various sellers to resist this evidence. And again, Mustang has evidence in its possession, we believe, that is not available from any other source. Counsel, do you think you could refile your 1782 application and say we're seeking only the information that's in Mustang's possession that's not available from any other source, as you just put it? So I don't know the answer to that, Your Honor. I think if, you know, were we in the position of that's our only option, I think we would, of course, argue we can. But I certainly hear that appellee would oppose it, and so I don't think that's the appropriate outcome. So if the court were to find, as we think it should, that the district court erred on its construction and application of the third factor, I think we think the appropriate outcome would be to reverse and to remand for consideration of the application solely in light of the federal rules of civil procedure. Now, on appellee's claim that, faulting Venikeep for failing to submit a revised subpoena, now, Venikeep, and I don't know if this is on the record, but Venikeep requested a hearing on this motion at which it expected that this issue would come up. A hearing was not held. Instead, the decision was entered denying the application wholesale. Appellee also faults Venikeep for failing to attempt to conference on the scope. Again, I don't know if this is in the record, but since appellee has raised it, trial counsel did approach counsel for Mustang on the potential to meet and confer on the scope, and that just simply didn't happen. And so in this case, the appropriate outcome would be to use the tool that is... You know, it is both available and is widely regarded as completely appropriate for protecting the rights of third parties, and that is the Federal Rules of Civil Procedure. And with that, we ask that the court reverse the district court decision. All right, counsel. Thank you. Thank you both for the briefing you've done in the case and for your presentations here today. The court will consider the matter under advisement. This concludes...